**Jerald Wynn BOITNOTT,**
**petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C1–97–1831.

Supreme Court of Minnesota.

July 30, 1998.

Teresa R. White, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., Hilary Lindell Caligiuri, Asst. Atty. Gen., Michael Jesse, Benton County Attorney, for respondent.

## OPINION

GARDEBRING, Justice.

In 1988, Jerald W. Boitnott was convicted of first-degree felony murder and second-degree assault. He was sentenced to life in prison for the first-degree felony murder and to a concurrent term of 36 months for the second-degree assault. On direct appeal to this court, Boitnott raised four issues: (1) insufficient evidence of intent; (2) erroneous jury instructions; (3) erroneous admission of a telephone conversation; and (4) prosecutorial misconduct. We affirmed the convictions. *State v. Boitnott*, 443 N.W.2d 527, 529 (Minn.1989).[1]

Nearly eight years later, Boitnott filed a petition for postconviction relief, alleging ineffective assistance of trial counsel for failure to communicate an alleged offer from the state to accept a guilty plea to second-degree murder. The postconviction court denied Boitnott's request for an evidentiary hearing on the claim and dismissed the petition. Boitnott now appeals to this court, and we affirm.

Boitnott's complaints about the performance of his trial counsel, Craig Cascarano, began several years after his murder and assault convictions, when he hired a private investigator to evaluate Cascarano's work. After receiving the investigation report, Boitnott filed a legal malpractice claim against Cascarano concerning his representation of Boitnott in the murder case and two other unrelated matters. With regard to the murder representation, Boitnott alleged that Cascarano failed to advise him of the potential availability of a plea agreement on second-degree murder and that he mishandled monies paid for Boitnott's defense. The district court granted summary judgment against Boitnott, finding that his claims lacked merit in all respects. The district court specifically stated that the evidence submitted by Boitnott raised no issues of material fact that a plea offer of second-degree murder was ever extended by the state. The court of appeals affirmed the grant of summary judgment, *Boitnott v. Cascarano*, No. C4–96–520, 1996 WL 523816 (Minn.App. Sept. 17, 1996), *pet. for rev. denied* and this court denied review (Minn., Dec. 17, 1996).

Subsequent to the resolution of the civil case, Boitnott filed a petition for postconviction relief, based upon a claim of ineffective assistance of trial counsel for failure to communicate the alleged plea agreement offer. He sought a hearing on his motion and, in support of his claim, Boitnott relied on many of the same documents that he had submitted in the civil malpractice proceeding.

These documents included the depositions of Cascarano and the prosecutor, William Klumpp, taken in the earlier case. Cascarano stated in his deposition that plea negotiations did occur, but that the only offer extended to Boitnott was to plead guilty to felony murder with intent, which would have resulted in a sentence of approximately 220 months. Cascarano testified that he communicated this offer to Boitnott, and that Boitnott refused it. Klumpp's deposition testimony states that he recalled the trial court judge encouraging both the prosecution and defense counsel to consider a plea of second-degree murder and that he relayed that information to the victim's family:

> I have a very clear recollection of those discussions with the judge, with Mr. Cascarano and with the family members of the homicide victim, * * * and then coming to the conclusion that we would—the prosecution would not make that kind of a plea offer, that we would stick with or the only offer we would make would be a plea to

---

1. Further details of the previous convictions are contained in the opinion on the direct appeal.

first degree murder and, in essence, we would dismiss the second degree assault charge which wasn't a very generous offer certainly * * *.

He also relied upon a November 24, 1987 letter to Cascarano from Benton County attorney Richard T. Jessen, which Boitnott considered a solicitation to negotiate. The letter said:

Judge Klaphake asked if there had been any settlement discussions and whether or not there was need for a settlement conference with the court prior to trial. I told him there had been no serious settlement discussions to date. Is Jerald Boitnott interested in a negotiated plea of some kind? If so, you can contact William Klump [sic].

He also submitted notes from a conference that took place in chambers without his presence, indicating that the trial court judge encouraged parties to consider a second-degree murder plea offer, but that both attorneys stated that they would not consider it. Finally, Boitnott presented a letter from his private investigator detailing a conversation between the investigator and Benton County Sheriff Frank Wippler. The letter included the following report of the interview:

"Were you surprised that Boitnott did not take the deal that was offered to him?" His immediate response was in the affirmative by shaking his head. His verbal response was "If he had taken the deal he'd be out in another five (5) years or so." My follow-up question was, "Why didn't he take the deal?" Sheriff Wippler responded, "I think he and his attorney thought they could convince the jury that he had not gone there with any plan to hurt Landwehr [the victim], but the jury didn't buy it."

In addition to the evidence identified above, the postconviction court also considered argument on the question of whether Boitnott's claim was barred under the doctrine of collateral estoppel. The court denied both Boitnott's request for a hearing and his postconviction petition. While the denial of

relief appears to be based in large part on the application of collateral estoppel, the postconviction court also specifically concluded that Boitnott submitted no evidence that tended to show that a second-degree murder plea offer was communicated to his attorney or that his attorney failed to apprise him of such an offer.[2]

A court may dismiss a petition for postconviction relief without conducting an evidentiary hearing if the petition, files, and record "conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (1996); see also Fratzke v. State, 450 N.W.2d 101, 102 (Minn.1990). On review, this court determines only whether there is sufficient evidence to support the postconviction court's findings and will not disturb the postconviction court's decision absent an abuse of discretion. Rainer v. State, 566 N.W.2d 692, 695 (Minn.1997). Specifically on the issue of ineffective assistance of counsel, we have said that, to be entitled to relief, a defendant must affirmatively demonstrate that his counsel's representation "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Gates v. State, 398 N.W.2d 558, 561 (Minn.1987) (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

We conclude that, on this record, Boitnott was entitled neither to an evidentiary hearing nor to substantive relief on his claim. Put simply, even taken in the light most favorable to him, none of the evidence submitted by Boitnott indicates that a second-degree murder plea offer was ever extended by the state. The letter from Jessen does not extend a second-degree plea offer, it merely asks whether Boitnott would be interested in a negotiated plea "of some kind." The notes from the conference in chambers show only that the judge urged the attorneys to consider a second-degree murder plea, not that the prosecutor extended such a plea. In

2. Because we conclude that Boitnott has submitted no evidence tending to show that a second-degree plea offer was ever extended by the state, we need not address the issue of the application of collateral estoppel.

fact, the notes indicate the prosecutor said that he would not agree to such a plea. Nor do the depositions of Cascarano and Klumpp provide evidence of the existence of an offer to accept a plea to second-degree murder.

Finally, the letter from Boitnott's private investigator does nothing to support Boitnott's assertion that a second-degree murder plea offer was extended. Sheriff Wippler's statements may be in reference to the terms of the plea offer about which Cascarano testified in his deposition, involving felony murder with intent and a sentence of 220 months, an offer that Boitnott refused. Furthermore, Sheriff Wippler is not an individual who would have been privy to plea offer discussions, and what he said to the private investigator is nothing more than conjecture on his part. Both individuals with first-hand knowledge of possible plea discussions, the prosecutor and Cascarano, definitively state that no second-degree murder plea offer was extended.

On this record, the postconviction court could have reasonably concluded that Boitnott was not entitled to the requested relief because the petition, files, and record do not suggest that a second-degree murder plea offer ever existed. We conclude that Boitnott has submitted no evidence that would entitle him to the requested relief and accordingly no evidentiary hearing on his postconviction petition was required.

Affirmed.

GILBERT, J., took no part.